FRANCES K. ALEXANDER *et al.* ·

*v.*

JOHN V. EMMETT *et al.*

*Opinion filed November 8, 1897.*

1. PROPOSITIONS OF LAW—*indefinite and incomplete propositions may be refused.* In a trial without a jury the court may refuse to hold as the law of the case propositions which are indefinite and incomplete.

2. APPEALS AND ERRORS—*one cannot complain of error in his own favor.* Modification of a proposition of law which was wrong as presented, and which as modified and given was still erroneous as being too favorable to the party who presented it, cannot be complained of on appeal.

3. FRAUD—*a finding for defendants in action for fraud upheld.* After a full consideration and review of the evidence in this case the action of the trial court in finding for the defendants in a suit for damages for false representations in the sale of land, tried without a jury, is upheld.

*Alexander* v. *Emmett*, 68 Ill. App. 261, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Whiteside county; the Hon. JOHN D. CRABTREE, Judge, presiding.

WILLIAM BARGE, for appellants.

WALTER STAGER, for appellees.

Per CURIAM:   The opinion of the Appellate Court for the Second District in this case, by LACEY, J., is as follows:

"This was an action on the case brought by the appellants, Frances K. Alexander, Aaron A. Wolfersperger, Herman Sturtz and L. Edwin Brookfield, originally against Walter S. Dray and John V. Emmett, in the circuit court of Whiteside county, July 9, 1891. Summons was served on appellee Emmett July 9, 1891, and on Walter S. Dray July 13, 1891, the first in Whiteside county

and the second served in Cook county, Illinois. All the appellants and appellee Emmett were residents of Sterling, Whiteside county. Appellee Walter S. Dray was a resident of Chicago, Cook county, Illinois, as also the present party, the Illinois Trust and Savings Bank, executor of the said Dray, deceased.

"The action is in case, of fraud and deception charged on the part of Walter S. Dray in the sale of one-third of twenty acres of land situated in Chicago, claimed to have been perpetrated by said Dray upon the appellants, assisted by John V. Emmett, one of the appellees, and also a joint purchaser from Dray, with the appellants, of the said land. After several terms of court a jury was waived and the cause was tried by the court without a jury. The case was heard by the court March 1, 1894, before the death of Dray. The latter died August 28, 1894. The death of Dray was suggested, and that he had died testate and that the Illinois Trust and Savings Bank had been appointed executor, and it was asked that the said bank be substituted as defendant, which was done by the court. This was November 13, 1894. Thereupon, on the same day, the plaintiffs filed a new count against the estate of Dray alone. On the 14th of November, 1894, summons was issued for Dray's executor, and it was served November 23, 1894. On May 27, 1895, the court found the issues for the defendants. Motion for a new trial was made by the appellants and overruled by the court and judgment entered against them for costs. From that judgment an appeal was taken to this court.

"John W. Alexander was the husband of Frances Alexander, and did all the negotiations for his wife in the purchase of the land hereafter mentioned from Dray, and Frances Alexander, the appellant, knows nothing about the transaction except what she learned from her husband and others.

"It appears from the evidence in the case that on the 16th and 17th days of May, 1890, in the office of Walter

S. Dray in Chicago, a trade was agreed upon between a portion of the appellants and the appellees Emmett and Walter S. Dray, for the purchase by the former from the latter of a one-third interest of twenty acres of land situate on Seventy-ninth street, in the city of Chicago, for $26,666.64, or $4000 per acre,—$9000 to be paid in cash and the balance in one, two and three years. On the 20th of May, 1890, the appellant Wolfersperger appeared in Dray's office in the city of Chicago, representing himself and all the other purchasers, and consummated the sale and took Dray's contract, paid the earnest money, gave a portion of the purchaser's notes, and arranged for giving the balance of the notes and purchase money to Dray. The notes were afterward given, notes subsequently paid in full and a deed taken from Dray and Dray's grantor. The purchasers from Dray, the next spring after the purchase of the land, disposed of it and sold it at $4750 per acre,—an advance of $750 per acre.

"The charge which is relied upon in the declaration for recovery in all the counts except the last is, that Walter S. Dray and John V. Emmett, who was pretending to act with the appellants but was abetting Dray to deceive them, made various representations by Dray to the effect that he had a friend who had a third of this land and that he would take a third himself; another that he had a friend who would take a third; another that he had two-thirds, which was more than he could carry, and wanted some one to take a third, and that for the exclusive privilege of selling the land he would get it for them for just what it cost him; others, that in consideration of this privilege he would let them have the land for what it cost him, which he said was $4000 per acre when in fact it only cost him $3000 per acre. He said there was 'big money' in the land and that he 'could sell it for them for $5000 before snow flies.' The amended count in the declaration was against Dray's executor alone.

"At this time Dray was not the owner of the land. On the 10th day of the same month (April) Dray, four days after the making of the representations, obtained a third interest in it by assignment from Bauer, assignee of a contract to him from one Neether, original owner of the land, and that the appellants would not have purchased the land of Dray save for the false representations, and had they known that the land only cost $3000 an acre, and that they did not know that the land only cost $3000 per acre until about a year after the contract was signed by Wolfersperger and Dray, and shortly before the commencement of the action. The gist of the action is fraud and deceit; that Dray and Emmett conspired together to deceive them, and that, relying upon their representations, they purchased the land.

"The question as to whether Dray made the representations claimed was hotly contested on the trial, the appellants depending entirely on their own testimony to support the allegations of the declaration. The defendants made absolute and emphatic denial that Walter S. Dray ever made the representations claimed, or undertook to purchase the land for the purchasers for what he could get it for, or sell it to them for what he had paid for it. They were supported in this contention by the testimony of Walter S. Dray and appellee Emmett, and Homer Dray and one Garnett, who wrote the contract between Dray and Wolfersperger, and corroborated by the surrounding circumstances of the case.

"It appears from the evidence that Emmett, Alexander, Sturtz, Brookfield, Dray, and his nephew Homer Dray, were present together in Dray's office on the 16th of May, 1890, and Wolfersperger also claims to have been there, and states what he claims to have been the conversation; that among other things Dray agreed to sell them the land for what it cost him; but we think the evidence pretty clearly shows that Wolfersperger was not there at all on that occasion. His memory in regard to

a number of instances which he testifies to, and dates, seems to be badly at fault. He was undoubtedly at home in Whiteside county on the 16th of May, 1890, and also on the 17th of the same month. He also testified that on the 16th Dray took him out and showed him the land, but finally admitted it was not on the 16th but on the 6th of the same month. Brookfield also made a like mistake, so that upon the whole testimony we think the court below was fully justified in finding that Wolfersperger was not in Chicago on May 16 and 17, 1890, and in disregarding his testimony as to what was said or done there on that day. Alexander and Sturtz and Brookfield state, in substance, that Dray represented that he would take a third interest himself and he wanted the Sterling people to take a third, and that he would take a third if the Sterling people would, and that as to the price the owner could not be induced, he thought, to take less than $4000 an acre. If he could, 'why, it would be that much less,' and that the remuneration Dray was to have, that he was going to have a third of it and full control of the sale of the whole, and that his commissions would be the usual commissions. Brookfield testified that Dray said, among other things, that he thought it would sell for $5000 an acre 'before snow flies,' and he thought he could buy the land for $4000 an acre, and that he would let them in on 'the ground floor,' as he expressed it, and that he would let them have it for just what it cost him. Sturtz testified to substantially the same thing. This testimony was completely contradicted by Walter S. Dray, and by Emmett, and Homer Dray. Emmett testifies, in substance, that Dray told them at the time that he had a third interest in a contract that was on the property; that the contract was for $60,000, and that he would sell his one-third interest at the rate of $80,000 for the whole tract, or $4000 per acre. He said that it cost him $20,000. Homer Dray states the same thing, as did also Walter S. Dray. And the evidence clearly shows that on the 10th of May,

—six days before this purported conversation,—Dray had become the purchaser of a one-third interest in this property for $20,000.

"It appears more than probable that if these parties ever had any conversation with Dray about his acquiring an interest in the land, it must have been on the 6th of May instead of the 16th, and if appellants' witnesses were so badly mixed up in dates and circumstances it is more than probable that they obtained a false impression of the whole matter. Besides this, it is expressly testified to by Emmett that he informed Wolfersperger on the 20th day of May, when he was preparing to go to Chicago to close up the deal with Dray, just what Dray was giving for the land; that Dray owned one-third interest in the tract, for which he paid $20,000, and that Dray had agreed to sell it to appellants and himself at the rate of $4000 an acre, and that there was $9000 of a cash payment. Wolfersperger denies this statement.

"When Wolfersperger arrived in Chicago on the 20th day of May, 1890, the trade was closed up between him and Dray in the presence of Garnett, and Dray and Garnett both testify, contradicted by Wolfersperger, that the whole matter was explained to Wolfersperger, and the assigned contract that Dray held shown to him, and it was stated to him just what Dray was to receive (his profit) $1000 an acre, and the balance was to go to the party from whom Dray purchased the land. Dray testified that he was asked by Wolfersperger at the time to make out a statement of the sale and the contract, and to send it to Sterling. Thereupon Dray did make out a statement on the 21st of May, 1890, in which he fully explained the sale and his interest in it, which was $6666.66, and which clearly showed that Dray had only paid $3000 an acre for the land. Emmett testified that he showed this statement to Wolfersperger, which Wolfersperger denies.

"There are many other facts and circumstances in the case tending to show that the appellants knew all about

it, and what Dray gave for the land, before the contract was entered into.   We think that the court was clearly justified in finding in favor of the defendants.   Even if it were a doubtful question in our mind where the preponderance of the evidence laid, we would not be justified in reversing the judgment unless the finding of the court was manifestly against the weight of the evidence.

"The court below did not err in modifying the appellants' fourth proposition of law, and even as modified it did not contain the law, it omitting the essential element that the plaintiff must rely upon the false representations.   The proposition was, that 'a misrepresentation of the amount paid for the land gives the plaintiffs a right of action against the defendants.'   The modification that was added to this by the court is as follows: 'provided fiduciary relation is shown to have existed between the parties at the time of the transaction.'   The modification was correct as far as it went, and the error committed by the court was in favor of the appellants in not refusing the holding entirely and in not modifying it sufficiently. Therefore the appellants cannot complain of this error.

"We think the court properly refused appellants' sixth proposition.   It was too indefinite and incomplete, and besides, generally, the burden of proof was on the plaintiffs.   The proposition is as follows: 'The burden of proof is on defendants to prove the plaintiffs knew what Dray paid for the land.'

"The court committed no error in holding defendants' first, second and fourth propositions to be law.   When the court marked these holdings the declaration had not been amended, and they were only applicable to the declaration as filed January 22, 1892.

"The court did not err in its rulings on the admissibility of evidence to the injury of the appellants, nor in refusing to grant a new trial.

"Seeing no error in the record the judgment of the court below is affirmed."

A careful examination of the facts of this case and a consideration of appellants' brief filed in this court convince us that on the questions of admission of evidence, and the giving, modifying and refusing instructions, the Appellate Court decided correctly. Those are the only propositions of law before us. We concur with the Appellate Court in its opinion, and that judgment is affirmed.

*Judgment affirmed.*